690 P.2d 951

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Bruce L. GROB, Defendant-Appellant.**

No. 14412. .

Court of Appeals of Idaho.

Oct. 31, 1984.

Motion to Accept Petition for Review by Supreme Court Denied Feb. 21, 1985.

Eric T. Nordlof, Seattle, Wash. (formerly of Coeur d'Alene), for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

This is a sentence review case. Appellant Grob has challenged a four-part series of sentences imposed for violent crimes committed against two female victims. After pleading guilty to each of the crimes, Grob received (1) an indeterminate life sentence for the first degree kidnapping of an adult woman with intent to rape her; (2) a concurrent and indeterminate fifteen-year sentence for the second degree kidnapping of her companion; (3) a consecutive and fixed ten-year sentence for an aggravated battery committed by shooting one of the victims; and (4) another consecutive, fixed ten-year sentence for using a firearm during commission of a felony. We affirm the sentences.

Grob's attack upon the sentences is two-pronged. First, he contends that the firearm sentence is unconstitutional. Second, he argues that the sentences, taken as a whole, were unduly harsh. We will consider these points in turn.

I

■ The first issue is whether the additional sentence for use of a firearm impermissibly infringes upon the right to bear arms as provided in the Idaho Constitution. We deem it clear that this sentence represented an enhancement of the sentence for aggravated battery—the only offense which the prosecutor charged as having been committed by use of a firearm. Prefatorily, we note that the constitutional issue has been raised for the first time on appeal. In a criminal appeal, we will not consider such issues unless they relate to fundamental error. E.g., *State v. Wells*, 103 Idaho 137, 645 P.2d 371 (Ct.App.1982). Here, Grob contends that the district judge lacked authority to impose the firearm sentence. Moreover, a constitutional question may be considered for the first time on appeal if such consideration is necessary for subsequent proceedings in a case. *Messmer v. Ker*, 96 Idaho 75, 524 P.2d 536 (1974). Grob's contention, were it not addressed on appeal, could be embodied in a subsequent motion under I.C.R. 35 to correct an allegedly illegal sentence. Accordingly, we deem it appropriate to consider the issue now.

■ Idaho Code § 19–2520, enacted in 1977, provides in pertinent part that a person convicted of using a firearm while engaged in kidnapping or aggravated battery, "shall, in addition to the sentence imposed for the commission of the crime, be imprisoned in the state prison for not less than three (3) nor more than fifteen (15) years." The right to bear arms is set forth at Article 1, § 11, of the Idaho Constitution. When I.C. § 19–2520 was enacted, the constitutional provision read as follows: "The people have the right to bear arms for their security and defense; but the legislature shall regulate the exercise of this right by law." In 1978, Article 1, § 11, was amend-

ed to narrow the scope of such regulation. However, the Legislature was authorized, *inter alia*, to prescribe "minimum sentences for crimes committed while in possession of a firearm" and to punish the unlawful "use of a firearm." Thus, whether examined against the 1978 or pre-1978 versions of Article 1, § 11, we believe I.C. § 19–2520 passes constitutional muster.

■ In a related line of argument, Grob contends that prior to the 1978 amendment of Article 1, § 11, a mandatory sentencing law—such as I.C. § 19–2520—impermissibly infringed upon the constitutional separation of legislative and judicial functions. Grob further argues that the infirm statute could not be saved by a subsequent constitutional amendment. Grob's argument is based upon the pre-1978 decision of our Supreme Court in *State v. McCoy,* 94 Idaho 236, 486 P.2d 247 (1971). In that case the Court struck down a statute imposing a mandatory minimum sentence for driving while intoxicated. However, we need not ponder the implications of *McCoy* in this appeal. In *State v. Cardona,* 102 Idaho 668, 637 P.2d 1164 (1981), the Supreme Court held the rule of *McCoy* inapposite to I.C. § 19–2520. The statute was upheld against a separation-of-powers attack. Consequently, the statute does not depend for its validity upon the 1978 amendment to Article 1, § 11. We hold that the district judge in this case did not act beyond his authority by imposing an additional sentence for use of a firearm, as provided by section 19–2520.

## II

Grob next contends that his sentences were unduly harsh. Grob could have been sentenced to death or life imprisonment for first degree kidnapping, twenty-five years for second degree kidnapping, fifteen years for aggravated battery and fifteen additional years for use of a firearm. *See* I.C. §§ 18–4504(1), 18–4504(2), 18–908 and 19–2520. Therefore, the sentences imposed were within the maximum statutory limits. Aside from the general issue of undue harshness, the propriety of imposing a fixed sentence under section 19–2520 has not been placed at issue in this appeal.

■ A sentence within statutory limits will not be disturbed unless a clear abuse of discretion is shown. *State v. Bartholomew,* 102 Idaho 106, 625 P.2d 1109 (1981). Such an abuse of discretion may be found if the sentence imposed is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

■ Sentencing determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, an appellate court will not substitute its view for that of a sentencing judge where reasonable minds might differ. The appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the criteria of protection of society, retribution, deterrence and rehabilitation. *State v. Toohill, supra.*

■ In applying the *Toohill* standard, we first must determine the actual measure of confinement for sentencing review purposes. With respect to the indeterminate life sentence, ten years is the measure of confinement. *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983). For the fifteen-year indeterminate sentence, one-third (or five years) is the appropriate measure under *Toohill.* That period is concurrent with the ten-year period on the indeterminate life sentence. With regard to the fixed sentences, the duration of confinement is deemed to be the term of the sentence less the statutory formula reduction available as a matter of right for good conduct. *State v. Miller,* 105 Idaho 838, 673 P.2d 438 (Ct.App.1983). Where, as here, the fixed sentence is ten years or more, an inmate may receive a reduction of

ten days for each month served. I.C. § 20–101A. If Grob earns the formula reduction for good time on his fixed sentences, he will serve approximately six and two-thirds years on each of them. Taking all of the sentences together, the aggregate measure of confinement is twenty-three and one-third years. Of course, this measure is solely for the purpose of appellate review and does not represent a prediction of actual parole or release.

 The question, then, is whether confinement for this period of time appears— under any reasonable view of the facts—to be longer than necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution. When weighing the reasonableness of a sentence, or of a consecutive series of sentences, our examination of the record focuses upon the nature of the offenses and upon the character of the offender. We turn first to the offenses.

After consuming alcohol at a tavern near Coeur d'Alene, Grob departed in his automobile and followed another car occupied by two women who also had patronized the bar. Without provocation, Grob forced the other car off the road. When the women initially refused to leave their car, Grob fired a shot through the driver's window, hitting one victim in the head. The bullet pierced her jaw and lodged in her neck. Grob forced both victims into his car and sexually molested one of them. As Grob drove the car down a highway, the injured victim grabbed the steering wheel, causing the vehicle to hit a power pole. The power lines fell and crackled on the ground. All three occupants left the vehicle and ran in different directions. Grob was apprehended by police a few hours later.

Grob's character was examined carefully in the district court proceedings. He was twenty-seven years old when the crimes in question occurred. The record indicates that he had a prior history of confrontation with authority. As a youth he was expelled from school. He was convicted of grand theft in California and had accumulated numerous other convictions for misdemeanors and traffic offenses. While serving in the Marine Corps, he was disciplined for striking an officer. On another occasion, while intoxicated, he started a fight with a group of men.

Alcohol and amphetamines played a major role in forming Grob's character. He had been through alcohol treatment programs in the Marine Corps and in civilian life. A psychologist and two psychiatrists concluded that Grob suffered from alcohol and amphetamine dependency. They also diagnosed a passive-aggressive personality. Based upon information supplied by Grob, the doctors suggested that he had been impaired by intoxication when he committed the subject crimes. However, information provided by the victims and the police cast doubt upon the extent of any such impairment.

A presentence investigation showed that Grob had been married and gainfully employed when the offenses were committed. The investigator said he was "at a loss" to explain Grob's actions. He found Grob to be "highly remorseful" but also noted that Grob appeared to be a "continuing threat to society."

The district judge entered formal findings of fact and conclusions of law after a sentencing hearing. He found two aggravating circumstances—the maiming of one victim and the exposure of both victims to a risk of death. The judge treated as a mitigating factor Grob's contention that he had been intoxicated and did not know what he was doing. The judge stated his concern that Grob would repeat his criminal conduct. The judge concluded that Grob was in need of "correctional treatment" and that "extended imprisonment" was warranted by the seriousness of the crimes. He further observed that the sentences imposed would be suitable punishment and would provide deterrence.

 In our view, these sentences were very strict. But the crimes were gravely serious and had an enduring, traumatic effect upon the victims. The district

judge gave sound and thoughtful reasons for his decision. A sentence of incarceration may be utilized to minimize the risk that a defendant's criminal conduct will recur. *E.g., State v. Jenkins,* 105 Idaho 166, 667 P.2d 269 (Ct.App.1983). Deterrence of others is also a sufficient ground for imposing a substantial prison sentence. *E.g., State v. Adams,* 99 Idaho 75, 577 P.2d 1123 (1978).

The facts of this case reasonably can be viewed to indicate that the length of Grob's confinement will not exceed the period necessary to achieve the goals of protecting society, retribution and deterrence. We conclude that the judge did not abuse his sentencing discretion. The sentences are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.